**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| In re:<br>Blackjewel, L.L.C., *et al.*,<br><br>Former Debtors.<br><br>BLACKJEWEL LIQUIDATION TRUST by and through DAVID J. BECKMAN, TRUSTEE,<br><br>Plaintiff,<br><br>v.<br><br>KOPPER GLO MINING, LLC; INMET MINING, LLC; and LR-REVELATION HOLDINGS, L.P.,<br><br>Defendants. | ) | Chapter 11<br><br>Case No. 19-30289<br><br>(Jointly Administered)<br><br>Adv. Proceeding No. ____________ |

**COMPLAINT**

The Blackjewel Liquidation Trust, by and through its Trustee David J. Beckman (the "Trust"), as successor for certain purposes of the estates of the former debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"),[1] for its adversary complaint ("Complaint") against Kopper Glo Mining, LLC ("KG") and INMET Mining, LLC ("INMET") (KG and INMET collectively "Kopper Glo"), states and alleges as follows.

[1] The former Debtors in these chapter 11 cases, and the last four digits of each former Debtor's former taxpayer identification number, were as follows: Blackjewel, L.L.C. (0823); Blackjewel Holdings L.L.C. (4745); Revelation Energy Holdings, LLC (8795); Revelation Management Corporation (8908); Revelation Energy, LLC (4605); Dominion Coal Corporation (2957); Harold Keene Coal Co. LLC (6749); Vansant Coal Corporation (2785); Lone Mountain Processing, LLC (0457); Powell Mountain Energy, LLC (1024); and Cumberland River Coal LLC (2213).

## NATURE OF COMPLAINT

1. This is an action against Kopper Glo for its failure to comply with three written agreements for the purchase of the Debtors' assets in bankruptcy, which agreements and obligations were encompassed in and approved by an order of this Court.

2. Specifically, Kopper Glo agreed to purchase the Black Mountain and Lone Mountain mining operations and assets in Harlan County, Kentucky; Letcher County, Kentucky; and Wise County, Virginia (collectively, the "Purchased Mines").

3. Under the agreements and court order pursuant to which it acquired the Purchased Mines, Kopper Glo must pay to the Trust royalties, liabilities, and employee-related costs, and has been required to furnish the Trust with regular reports setting forth the gross production and fair market value of the operation of the Purchased Mines within 45 days following the end of each calendar quarter until the royalty obligations are satisfied.

4. Notwithstanding its obligation to do so under the contracts and order of the Court, Kopper Glo has refused to furnish the reports since the second quarter of 2020 and failed to make the required payments.

5. As a result of its breaches, Kopper Glo owes the Trust at least $19,534,602.70 as of the date of this Complaint. This sum includes $17,688,298.52 in royalties; $826,304.18 of assumed liabilities; and $1,020,000, of employee-related costs. True and accurate calculations detailing these amounts owed by Kopper Glo are set forth in composite **Exhibit A**, which is incorporated herein by reference.

6. Kopper Glo's breaches have also caused the Trust to incur at least $187,808.02 in legal fees and expenses and $49,000 of other fees (as of June 30, 2022).

## JURISDICTION AND VENUE

7. Pursuant to 28 U.S.C. §§ 157 and 1334, this Court has jurisdiction over this adversary proceeding.

8. This is a core proceeding under 28 U.S.C. § 157(b).

9. The Trust consents to the Court's entry of a final order in connection with this adversary proceeding.

10. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

11. The predicates for the relief requested herein include 11 U.S.C. §§ 1105(a) and 363; 28 U.S.C. § 12201; and the Federal Rules of Bankruptcy Procedure, including their incorporation of applicable Federal Rules of Civil Procedure.

## THE PARTIES

12. KG is a Delaware limited liability company with a principal office in Knoxville, Tennessee.

13. INMET is a Delaware limited liability company with a principal office in Knoxville, Tennessee.

14. Pursuant to the Debtors' plan of liquidation, the Trust is a successor, for certain purposes, to the Debtors as of April 1, 2021. The Court authorized the Trustee to, among other things, liquidate the Debtors' remaining assets, including the royalties and other obligations owed by Kopper Glo. The Court approved the appointment of David J. Beckman as the Trustee of the Trust.

15. Upon information and belief, LR-Revelation Holdings, L.P. ("Lime Rock") is a Delaware limited partnership with a principal office in Westport, Connecticut. As the result of a partial assignment and the corresponding obligation owed to Lime Rock by Kopper Glo, Lime

Rock has an interest relating to the subject of this action and is joined so that a judgment of the Court may render complete relief among the interested parties, including for purposes of a declaratory judgment. The Trust does not seek any money judgment against Lime Rock.

## ALLEGATIONS COMMON TO ALL CLAIMS

### The Agreements and the Sale Order.

16. The Debtors filed for voluntary chapter 11 bankruptcy beginning on July 1, 2019.

17. On July 25, 2019, the Debtors filed a motion [Docket No. 312] requesting, among other things, approval of bidding procedures, an auction process, and one or more sales of their assets.

18. On July 26, 2019, the Court approved the Debtors' requested relief [Docket No. 356], set forth the dates for interested parties to bid on the Debtors' assets, approved the Debtors to administer an auction, and scheduled a Court hearing to approve the proposed sales.

19. At the auction, KG agreed to buy the Purchased Mines pursuant to three agreements between the Debtors and INMET, each agreement effective as of September 7, 2019: (A) a Royalty Agreement (the "Base Royalty Agreement") providing for Kopper Glo to make six annual $2,738,092 payments as part of the consideration paid for the Purchased Mines; (B) an additional, separate Royalty Agreement (the "Employee Royalty Agreement") relating to Kopper Glo providing the Debtors with $550,000 of payments related to unpaid wages of employees (the Base Royalty Agreement and the Employee Royalty Agreement sometimes collectively the "Royalty Agreements"); and (C) an Assignment and Assumption Agreement and Bill of Sale Regarding Specific Assets (the "Assignment Agreement," collectively with the Royalty Agreements, the "Agreements").

20. True and accurate copies of the Base Royalty Agreement, the Employee Royalty Agreement, and the Assignment Agreement are attached hereto as **Exhibit B**, **Exhibit C**, and **Exhibit D**, respectively, and are incorporated herein by reference.

21. On September 17, 2019, the Court entered an *Order (I) Approving the Sale of Certain Assets to Kopper Glo Mining, LLC Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 1096] (the "Sale Order").

22. A true and accurate copy of the Sale Order is attached hereto as **Exhibit E** and is incorporated herein by reference.

23. Pursuant to Paragraph 18 of the Sale Order, the (A) Assignment Agreement, (B) Sale Order, and (C) "the transaction contemplated thereby and hereby [(*i.e.*, the Royalty Agreements)], shall, as applicable, be ***specifically enforceable against and be binding in all respects upon*** . . . the Buyer [(*i.e.*, KG)], and their respective affiliates [(*i.e.*, INMET)], successors and assigns." In other words, the Sale Order makes the Agreements enforceable against and binding upon not only INMET, but also KG. Each of the Agreements provided that the Purchased Mines were acquired from the Debtors pursuant to the terms of the Sale Order.

## THE ROYALTY AGREEMENTS

### Kopper Glo Breached the Royalty Agreements' Reporting Obligations.

24. Each of the Royalty Agreements requires Kopper Glo to provide written quarterly reports to the Trust as follows:

> Within forty-five (45) days following the end of each calendar quarter until the Royalty has been paid in full, [Kopper Glo] shall furnish to [the Debtors/Trustee] (or its designee) a report setting forth the gross production and fair market value of the operation of the Purchased Mines for such period. [W]ithin 45 days following the end of each calendar quarter until the royalty obligations are satisfied, [Kopper Glo] is required to furnish to

> the Debtors/Trustee a report setting forth the gross production and fair market value of the operation of the Purchased Mines for such period.

25. Kopper Glo's production reports for the fourth quarter 2019 and first quarter 2020 were provided after the required deadline and only after demand by the Debtors.

26. Kopper Glo has failed to provide any required production report since the one for the first quarter of 2020. Kopper Glo has failed to meet its contractual obligation to provide the nine production reports due since the first quarter of 2020.

27. Kopper Glo's failure to deliver the nine production reports is a breach of the Royalty Agreements.

**Kopper Glo Breached the Employee Royalty Agreement's Payment Obligations.**

28. Under the Employee Royalty Agreement, Kopper Glo must pay an aggregate total of $550,000 to the Trust "beginning upon recommencement of mining operations at the Purchased Mines and continuing for twenty-four (24) months thereafter (or sooner in the event that the entire Royalty Amount is paid in the last 24 months)."

29. Kopper Glo recommenced mining operations at the Purchased Mines no later than the fourth quarter of 2019.

30. Kopper Glo's commencement of mining operations at the Purchased Mines was confirmed by Kopper Glo's production reports for the fourth quarter 2019 period.[2]

31. Based on Kopper Glo's production at the Purchased Mines beginning in the fourth quarter of 2019, as of the start of the first quarter of 2022 Kopper Glo owes the Trust the entire $550,000 payment under the Employee Royalty Agreement.

---

[2] Pursuant to publicly available coal production information maintained by the Mine Safety and Health Administration ("MSHA"), which itself is based on the Purchased Mines data furnished by Kopper Glo to MSHA, Kopper Glo has produced more than 1.5 million tons of coal since the fourth quarter of 2019.

32. The $550,000 payment under the Employee Royalty Agreement is due and owing by Kopper Glo but remains unpaid, which is a breach of the Employee Royalty Agreement.

**Kopper Glo Failed to Pay the Base Royalty Agreement's Fixed Annual Payment.**

33. The Base Royalty Agreement requires Kopper Glo to make separate, fixed payments, *i.e.*, "regardless of whether the Purchased Mines are operating or producing saleable coal." Specifically, Kopper Glo agreed to pay $16,428,552, in annual fixed installments of $2,738,092, commencing on September 7, 2020.

34. Kopper Glo also agreed that any missed annual payments "shall accrue interest at an annual rate equal to the prime rate as published in the *Wall Street Journal*, plus 5%, compounded monthly, which shall be payable on demand."

35. On October 18, 2019, Blackjewel assigned two annual payments to Riverstone Credit Partners – Direct, L.P., which in turn, later assigned those annual payments to Lime Rock.

36. Kopper Glo failed to make any of the annual payments of $2,738,092.

37. Kopper Glo's failure to make these annual payments is a breach of and an event of default under the Base Royalty Agreement, which entitles the Trust to, among other things, "accelerate any or all then remaining unpaid payments required by this [Base Royalty] Agreement."

38. The Trust duly notified Kopper Glo about the existence of events of default, including defaults arising from the Base Royalty Agreement.

39. On December 8, 2021, the Trust also notified Kopper Glo of the Trust's election to accelerate the outstanding royalty payments due to the Trust under the Base Royalty Agreement, including accrued interest.

40. Kopper Glo is currently obligated to pay $17,138,298.52 under the Base Royalty Agreement, which encompasses $16,428,552 of royalty payments and $709,746.52 of accrued interest due (as of August 7, 2022) to the Trust and Lime Rock.

## THE ASSIGNMENT AGREEMENT

### Kopper Glo Breached the Assignment Agreement by Failing to Pay for Assumed Liabilities and Post-Effective Date Employee Reimbursement Obligations

41. In the Assignment Agreement (specifically, in subsection (e) of Exhibit F to the Assignment Agreement), Kopper Glo agreed to assume "all Liabilities of any kind or character resulting from or arising out of or in connection with [Kopper Glo's] use, operation, possession or ownership of or interest in the Purchased Assets after" September 7, 2019 through the entry of the Sale Order.

42. From September 7, 2019 through the entry of the Sale Order, the Debtors incurred $826,304.18 of expenses primarily related to electricity, telecom, security, and facility repairs (the "Assumed Liabilities"). The Assumed Liabilities were assumed by Kopper Glo and should have been paid by Kopper Glo. Kopper Glo approved all of the Assumed Liabilities prior to the Debtors making such payments.

43. From September 7, 2019 through the entry of the Sale Order, the Debtors also incurred and paid $237,084.77 of employee related expenses related to the Purchased Mines that should have been paid by Kopper Glo under the Assignment Agreement (the "Post-Effective Date Employee Reimbursement Obligations").

44. The $826,304.18 of Assumed Liabilities are due and owing, yet remain unpaid by Kopper Glo, which constitutes a breach of the Assignment Agreement.

45. The $237,084.77 of Post-Effective Date Employee Reimbursement Obligations are due and owing, yet remain unpaid by Kopper Glo, in breach of the Assignment Agreement.

**Kopper Glo Breached Its Agreement to Pay Pre-Effective Date Reimbursement Obligations**

46. Kopper Glo breached an amendment to the Assignment Agreement, which required Kopper Glo to pay both the Post-Effective Date Employee Reimbursement Obligations (*i.e.*, relevant expenses incurred from September 7, 2019 to September 17, 2019, discussed above) **as well as** certain employee related expenses that the Debtors incurred from the date of the auction, August 1, 2019, to September 7, 2019 (the "Pre-Effective Date Employee Reimbursement Obligations").

47. Specifically, when the Debtors and Kopper Glo were negotiating the Assignment Agreement, each side inadvertently failed to incorporate their agreement that Kopper Glo would pay the Pre-Effective Date Employee Reimbursement Obligations.

48. The Debtors and Kopper Glo confirmed, in writing, an agreement to amend the Assignment Agreement to address this, *i.e.*, to require Kopper Glo to pay the Pre-Effective Date Employee Reimbursement Obligations, as the Debtors and Kopper Glo had intended.

49. In the agreed amendment to the Assignment Agreement, (A) the Debtors agreed to reduce the total amount of the Pre- and Post-Effective Date Obligations from $1,117,685 to $1,020,000, resulting in a savings to Kopper Glo of $97,685, and Kopper Glo agreed to pay this $1,020,000 amount (*i.e.*, $782,915.23 comprising the Pre-Effective Date Obligations and $237,084.77 comprising the Post-Effective Date Employee Reimbursement Obligations); and (B) the Debtors and Kopper Glo agreed to extend the time period for Kopper Glo to pay the combined Pre- and Post-Effective Date Obligations over a 6 month period (at $170,000/month) through March 2020.

50. A copy of Kopper Glo's agreement to amend the Assignment Agreement is attached hereto as **Exhibit F**, and is incorporated by reference.

51. Notwithstanding its agreement, Kopper Glo failed to make any payments towards either the Pre- or Post-Effective Date Obligations totaling $1,020,000, which remain due and owing in breach of the amended Assignment Agreement.

**Kopper Glo Admitted That It Has Breached Obligations Under the Agreements**

52. Kopper Glo has acknowledged to the Trust and the Trust's professionals that Kopper Glo has breached its obligations under the Agreements.

53. Additionally, at a March 17, 2022 hearing regarding the Trust's efforts to enforce Kopper Glo's obligations in the main bankruptcy case, counsel for Kopper Glo admitted that Kopper Glo is liable for payments under the Agreements, stating "[w]e also don't dispute, as Mr. Lerner said . . . that [Kopper Glo] has not been able to make the payments that it would like to make and that it is required to make."

**COUNT ONE**

**(Against Kopper Glo for Declaratory Judgment Regarding Obligations Under the Agreements and the Sale Order)**

54. The Trust incorporates each and every allegation contained in paragraphs 1 through 53 of this Complaint as if fully rewritten herein.

55. Pursuant to Paragraph 18 of the Sale Order, the Agreements are all enforceable against, and binding upon, Kopper Glo, and Kopper Glo is obligated to perform under the Agreements and the Sale Order.

56. An actual and justiciable controversy exists between the Trust and Kopper Glo concerning the rights and obligations under the Agreements and the Sale Order, including regarding Kopper Glo's obligation to pay royalties, assumed liabilities, and employee reimbursement obligations, and to provide quarterly production reports.

57. This controversy is within this Court's original jurisdiction.

58. Pursuant to 28 U.S.C. § 2201, 11 U.S.C. § 105, and Bankruptcy Rule 7001(9), this Court may declare the rights and legal relations between the Trustee and Kopper Glo, and that declaration has the force and effect of a final judgment.

59. The Trustee is entitled to, and hereby expressly requests, a declaration that Kopper Glo is obligated to and must (A) furnish all reports since the first quarter of 2020, setting forth the gross production and fair market value of the operation of the Purchased Mines; (B) pay the Trust $550,000 pursuant to the Employee Royalty Agreement; (C) pay $17,138,298.52 pursuant to the Base Royalty Agreement, which encompasses $16,428,552 of royalty payments and $709,746.52 of accrued interest (as of August 7, 2022) due to the Trust and Lime Rock; (D) reimburse the Trust $826,304.18 for Assumed Liabilities and $237,084.77 of Post-Effective Date Employee Reimbursement Obligations pursuant to the Assignment Agreement; and (E) reimburse the Trust $782,915.23 of Pre-Effective Date Employee Reimbursement Obligations pursuant to the amended Assignment Agreement.

**COUNT TWO**
**(Against Kopper Glo for Breach of Contract)**

60. The Trustee incorporates each and every allegation contained in paragraphs 1 through 59 of this Complaint as if fully rewritten herein.

61. The Agreements are valid and enforceable written contracts.

62. The Agreements are enforceable by the Trustee against Kopper Glo.

63. All conditions to Kopper Glo's performance under the Agreements were performed or have occurred.

64. Kopper Glo breached each of the Agreements. Kopper Glo breached the Royalty Agreements by refusing to furnish all reports, since the first quarter of 2020, setting forth the gross production and fair market value of the operation of the Purchased Mines within 45 days following

the end of each calendar quarter until the royalty obligations are satisfied. Kopper Glo also breached the Base Royalty Agreement by, among other things, failing to pay $17,138,298.52, which encompasses $16,428,552 of royalty payments and $709,746.52 of accrued interest (as of August 7, 2022) due to the Trust and Lime Rock. Kopper Glo also breached the Employee Royalty Agreement by, among other things, failing to pay the Trust $550,000. Kopper Glo breached the Assignment Agreement by refusing to reimburse the Trust $826,304.18 for Assumed Liabilities and $237,084.77 of Post-Effective Date Employee Reimbursement Obligations. Kopper Glo breached the amended Assignment Agreement by failing to reimburse the Trust $782,915.23 of Pre-Effective Date Employee Reimbursement Obligations.

65. Kopper Glo has admitted its breaches of the Agreements.

66. Kopper Glo also breached the implied duty of good faith and fair dealing existing under the Agreements, including by withholding the required production reports quantifying Kopper Glo's obligation, by causing the Trust to incur expenses and liabilities from Kopper Glo's activities, and by continuing to mine with no intention of paying required royalty obligations associated with that mining and production.

67. The Trust has been damaged as the proximate result of Kopper Glo's breaches of contracts.

68. As the result of its breaches of the Agreements, Kopper Glo is liable for and legally obligated to pay the Trust's damages, which will be proven at trial and include at least $550,000 under the Employee Royalty Agreement; $17,138,298.52 under the Base Royalty Agreement, which encompasses $16,428,552 of royalty payments and $709,746.52 of accrued interest (as of August 7, 2022) due to the Trust and Lime Rock; $826,304.18 of Assumed Liabilities; $237,084.77 of Post-Effective Date Employee Reimbursement Obligations under the Assignment Agreement;

$782,915.23 of Pre-Effective Date Employee Reimbursement Obligations under the amended Assignment Agreement; and $187,808.02 in legal fees and expenses and $49,000 of financial service fees (as of June 30, 2022).

69. Until Kopper Glo pays all amounts required under the Agreements, the Trust is entitled to specific performance of Kopper Glo's obligation to provide required production reports. Kopper Glo should be required to provide the required production reports for past and future periods.

## **RELIEF REQUESTED**

WHEREFORE, the Trust demands judgment in its favor as follows:

A. On Count I, that the Court issue a declaratory judgment that Kopper Glo is obligated to and must (i) furnish all reports, since the first quarter of 2020, setting forth the gross production and fair market value of the operation of the Purchased Mines; (ii) pay the Trust $550,000 under the Employee Royalty Agreement; (iii) pay $17,138,298.52 pursuant to the Base Royalty Agreement, which encompasses $16,428,552 of royalty payments and $709,746.52 of accrued interest (as of August 7, 2022) due to the Trust and Lime Rock; (iv) reimburse the Trust $826,304.18 for Assumed Liabilities and $237,084.77 for Post-Effective Date Employee Reimbursement Obligations under the Assignment Agreement; and (v) reimburse the Trust $782,915.23 for Pre-Effective Date Employee Reimbursement Obligations pursuant to the amended Assignment Agreement.

B. On Count II, that the Court enter a money judgment against Kopper Glo in favor of the Trust in an amount to be proven at trial, plus reasonable attorneys' fees and costs, including at least $550,000 under the Employee Royalty Agreement; $17,138,298.52 under the Base Royalty Agreement, which encompasses $16,428,552 of royalty payments and $709,746.52 of accrued interest (as of August 7, 2022) due to the Trust and Lime Rock; $826,304.18 of Assumed Liabilities; $237,084.77 of Post-Effective Date Employee Reimbursement Obligations; $782,915.23 of Pre-Effective Date Employee Reimbursement Obligations; and $187,808.02 in legal fees and expenses and $49,000 of financial service fees (as of June 30, 2022).

C. On Count II, that the Court order specific performance requiring Kopper Glo, until all amounts required under the Agreements are paid to the Trust, to provide to the Trust past and future production reports.

D. That the Court issue an Order awarding the Trust all other relief the Court finds equitable and just, including reasonable attorneys' fees, costs, and pre- and post-judgment interest.

[*Remainder of Page Intentionally Left Blank*]

DATED: August 30, 2022

**SUPPLE LAW OFFICE, PLLC**

Joe M. Supple, Bar. No. 8013
801 Viand St.
Point Pleasant, WV 25550
Telephone: 304.675.6249
Facsimile: 304.675.4372
joe.supple@supplelawoffice.com

– and –

**SQUIRE PATTON BOGGS (US) LLP**

*/s/ Stephen D. Lerner*

Stephen D. Lerner (admitted *pro hac vice*)
Scott A. Kane (admitted *pro hac vice*)
Travis A. McRoberts (admitted *pro hac vice*)
Kyle F. Arendsen (admitted *pro hac vice*)
201 E. Fourth St., Suite 1900
Cincinnati, Ohio 45202
Telephone: 513.361.1200
Facsimile: 513.361.1201
stephen.lerner@squirepb.com
scott.kane@squirepb.com
travis.mcroberts@squirepb.com
kyle.arendsen@squirepb.com

*Co-Counsel to the Blackjewel Liquidation Trust, LLC*