_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE
**Dated: November 23rd, 2022**


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 19-30289 |
| | ) | |
| Blackjewel L.L.C., *et al.*, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| Blackjewel Liquidation Trust | ) | |
| by and through David J. | ) | |
| Beckman, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 22-3001 |
| | ) | |
| Kopper Glo Mining, LLC; | ) | |
| Inmet Mining, LLC; and | ) | |
| LR-Revelation Holdings, L.P., | ) | |
| | ) | |
| Defendants. | ) | |


**MEMORANDUM OPINION DETERMINING THIS COURT MAY ENTER FINAL ORDERS
AND DENYING DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE**

This adversary proceeding is before the Court on the *Motion to Dismiss for Improper Venue* filed by Kopper Glo Mining, LLC ("Kopper Glo") and INMET Mining, LLC ("INMET") (together "Defendants") on September 30, 2022, ECF No. 13 ("Motion to Dismiss"), and the *Motion to Determine that the Proceeding is Non-*

1

*Core* filed by Defendants on November 7, 2022, ECF No. 23 ("Motion to Determine").  For the reasons stated herein, the Court will determine that it may enter final orders in this proceeding and will deny Defendants' Motion to Dismiss for improper venue.

## I. Procedural Background

The Blackjewel Liquidation Trust, by and through its Trustee David J. Beckman ("Plaintiff"), as successor for certain purposes of the estates of the former debtors[1] and debtors-in-possession in the above-captioned chapter 11 case,[2] commenced this adversary proceeding by filing a complaint on August 30, 2022, against

---

[1] The debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Blackjewel, L.L.C. (0823) ("Blackjewel"); Blackjewel Holdings L.L.C. (4745); Revelation Energy Holdings, LLC (8795); Revelation Management Corporation (8908); Revelation Energy, LLC (4605) ("Revelation"); Dominion Coal Corporation (2957); Harold Keene Coal Co. LLC (6749); Vansant Coal Corporation (2785); Lone Mountain Processing, LLC (0457); Powell Mountain Energy, LLC (1024); and Cumberland River Coal LLC (2213).  The Court converted the cases of Cumberland River Coal, LLC and Powell Mountain Energy, LLC to cases under chapter 7.  The remaining debtors will be referred to herein as "Debtors."

[2] The Court confirmed Debtors' plan, ECF No. 2499 (the "Plan"), on March 22, 2021.  Bankr. Case No. 19-30289, ECF No. 3147 (the "Confirmation Order").  Article 9 of the Plan created a Liquidation Trust that was vested with "all right, title and interest in all of the Liquidation Trust Assets, as well as the rights and powers of each Debtor in such Liquidation Trust Assets . . . free and clear of all Claims and Interests for the benefit of the Liquidation Trust Beneficiaries."  Plan, pp. 28-29, §§ 9.2.1 and 9.3.1.  Among the Liquidation Trust Assets were the Liquidation Trust Causes of Action, which, in turn, included the Causes of Action in the Litigation Proceedings.  Id. at p. 8, §§ 1.1.56 and 1.158.  The Litigation Proceedings include Plaintiff's claims in this adversary proceeding.  Id. at p. 8, § 1.1.62 and p. 12, § 1.1.96.  The Confirmation Order is a final order.  Pursuant to the Plan, the Liquidation Trust, as managed by the Liquidation Trustee, has been substituted as Plaintiff in this action.  Id. at p. 8, § 1.1.61 and pp. 29-30, § 9.5.  The terms of the Plan retained jurisdiction for this Court to hear and determine the Liquidation Trust Causes of Action.  Id. at p. 44, § 13.1.9.  The Liquidation Trust Causes of Action are the primary means of implementing the Plan, and the inclusion of the Liquidation Trust Causes of Action among the Liquidation Trust Assets was instrumental in garnering creditor support for confirmation.

Defendants and LR-Revelation Holdings, L.P. ("LR-Revelation").
ECF No. 1 ("Complaint").  Plaintiff sought declaratory relief,
specific performance, and monetary damages for breach of contract
by Defendants and LR-Revelation.  Id.

On September 30, 2022, Defendants filed the Motion to Dismiss
and *Memorandum of Law in Support of Motion to Dismiss for Improper
Venue*.  ECF No. 14.  Defendants argue that the claims arising out
of the Base Royalty Agreement and the Employee Royalty Agreement
should be dismissed for improper venue because the parties
"unconditionally and irrevocably consented to the exclusive
jurisdiction of state courts located in Fayette County, Kentucky."
Id. at 6.  In the alternative, Defendants argue that the Complaint
should be dismissed "for improper venue for all claims arising out
of the Royalty Agreements and the Assignment and Assumption
Agreement and Bill of Sale Regarding Specific Assets" because it
would be more appropriately brought in Fayette County, Kentucky.
ECF No. 13, p. 2; ECF No. 14, p. 11.

On October 4, 2022, Defendants filed a *Supplement to the
Motion to Dismiss for Improper Venue*.  ECF No. 16.  Defendants
stated that they do not consent to the entry of any final orders
or judgements by this Court.  Id.  Thereafter, this Court entered
a Scheduling Order in which it gave thirty days for "[a]ny party
contending that the Bankruptcy Court lacks authority to enter final
judgment as to any claim for relief in the pleadings other than as

3

a result of the forum selection clauses" to file a motion and supporting memorandum to determine whether this Court may enter a final judgment.  ECF No. 19, p. 3-4.

On October 20, 2022, Plaintiff filed an *Opposition to Defendants' Motion to Dismiss*.  ECF No. 21 ("Objection to Motion"). Plaintiff argues that it has made prima facie showing that this Court is the proper venue; thus, the Court should deny the Motion to Dismiss.  Id.  On October 27, 2022, Defendants filed a *Reply in Support of Motion to Dismiss for Improper Venue*.  ECF No. 22 ("Reply").

On November 7, 2022, Defendants timely filed the Motion to Determine and *Memorandum of Law in Support of Motion for Determination that the Proceeding is Non-Core*.  ECF No. 24. Defendants argue that Plaintiff's claims for relief are not listed in 28 U.S.C § 157(b)(2); thus, the proceeding is non-core.  Id. at 6.

## II. Facts

On July 1, 2019, Debtors filed a bankruptcy petition under chapter 11 of the Bankruptcy Code.  Case No. 19-30289, ECF No. 1. On July 25, 2019, Debtors filed a Motion "requesting, among other things, approval of bidding procedures, an auction process, and one or more sales of their assets."  ECF No. 1, ¶ 17; see Case No. 19-30289, ECF No. 312.  The Court entered an order approving the Motion on July 26, 2019.  Case No. 19-30289l, ECF No. 356.

4

On or about September 7, 2019,[3] Debtors and INMET entered three agreements relating to INMET's purchase of "the Black Mountain and Lone Mountain mining operations and assets in Harlan County, Kentucky; Letcher County, Kentucky; and Wise County, Virginia (collectively, the 'Purchased Mines')." ECF No. 1, ¶ 2. The agreements are:

> (A) a Royalty Agreement (the "<u>Base Royalty Agreement</u>") providing for Kopper Glo to make six annual $2,738,092 payments as part of the consideration paid for the Purchased Mines; (B) an additional, separate Royalty Agreement (the "<u>Employee Royalty Agreement</u>") relating to Kopper Glo providing the Debtors with $550,000 of payments related to unpaid wages of employees (the Base Royalty Agreement and the Employee Royalty Agreement sometimes collectively the "<u>Royalty Agreements</u>"); and (C) an Assignment and Assumption Agreement and Bill of Sale Regarding Specific Assets (the "<u>Assignment Agreement</u>," collectively with the Royalty Agreements, the "<u>Agreements</u>").

ECF No. 1, ¶ 19.  Under the Assignment Agreement, INMET acquired Transferred Permits, Owned Real Property, Assumed Leases, and Equipment in exchange for a payment of $6,800,00.00 to Debtors. ECF No. 1, Ex. D, ¶ 1, 4(a).

On September 17, 2019, the Court entered an *Order (I) Approving the Sale of Certain Assets to Kopper Glo Mining, LLC Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (II) Approving the Assumption and Assignment of Certain Executory*

---

[3] Each of the Agreements is dated September 7, 2019.  David J. Beckman, as Interim Chief Executive of Debtors, signed the Employee Royalty and Base Royalty Agreements on August 30, 2019, according to the notarization of his signatures. The signature of Hunter Hobson, as President of INMET Mining, LLC, is unnotarized and undated on each of those documents.  The signatures on the Assignment Agreement are undated.

*Contracts and Unexpired Leases, and (III) Granting Related Relief*.
Case No. 19-30289, ECF No. 1096 (the "Sale Order"). The Sale Order
approved the sale transactions, including the Royalty Agreements
and the Assignment Agreement.

The Royalty Agreements and the Assignment Agreement contain
forum selection clauses. The forum selection clause in the
Assignment Agreement provides:

> This Agreement and the transfer of the Purchased Assets
> effected hereby are subject to the term of the Sale Order.
> The Bankruptcy Court will retain exclusive jurisdiction to
> enforce the terms of this Agreement and to decide any claims
> or disputes, which may arise or result from, or be connected
> with, this Agreement, any breach or default hereunder, or the
> transaction contemplated under this Agreement. Any and all
> proceedings related to the foregoing will be filed and
> maintained only in the Bankruptcy Court, and the parties
> hereby consent to and submit to the jurisdiction and venue of
> the Bankruptcy Court for such purposes . . ..

ECF No. 1, Ex. D, ¶ 6. The Royalty Agreements provide the following
forum selection clause:

> This Agreement shall be governed by and construed in
> accordance with the internal laws of the Commonwealth of
> Kentucky . . ... The parties agree to unconditionally and
> irrevocably submit to the exclusive jurisdiction of the State
> Courts located in Fayette County, Kentucky (or in the event
> (but only in the event) that such court does not have subject
> matter jurisdiction over such proceeding, in the United
> States District Court for the Eastern District of Kentucky)
> and any appellate court from any thereof, for the resolution
> of any disputes based on or arising out of this Agreement.
> The parties hereby waive, to the fullest extent permitted by
> applicable law, any objection which they may now or hereafter
> have to the laying of venue of any such dispute brought in
> such court or any defense of inconvenient forum for the
> maintenance of such dispute.

ECF No. 1, Ex. B and C, ¶ 18. The Court retained jurisdiction to

enforce and interpret the terms of the Sale Order, providing as follows:

> This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, all amendments thereto, and any waivers and consents thereunder . . .

Case No. 19-30289, ECF No. 1096, ¶ 21.

### III. Discussion

**A.    This Court has Subject Matter Jurisdiction, Statutory Authority, and Constitutional Authority to Enter Final Orders in this Proceeding.**

"[I]n order for a bankruptcy court to hear and determine any matter, it must have subject matter jurisdiction under 28 U.S.C. § 1334, statutory authority under 28 U.S.C. § 157, and constitutional authority." Harvey v. Dambowsky (In re Dambowsky), 526 B.R. 590, 595 (Bankr. M.D.N.C. 2015). Although these are distinct concepts, the analyses overlap. Id. at 596 (citing Deitz v. Ford (In re Deitz), 469 B.R. 11, 28 (B.A.P. 9th Cir. 2021).

1.  **The Court has subject matter jurisdiction over this proceeding because a proceeding to enforce a contract entered with the debtor in possession "arises in" a case under title 11.[4]**

Bankruptcy subject matter jurisdiction is derivative of the district courts.  A district court may refer any case or proceeding over which it has bankruptcy subject matter jurisdiction to the bankruptcy court.  The United States Court of Appeals for the Fourth Circuit and the United States District Court for the Southern District of West Virginia referred the underlying bankruptcy case and all associated proceedings to this Court. Under 28 U.S.C. § 155(a), the Honorable Roger L. Gregory, Chief Judge of the United States Court of Appeals for the Fourth Circuit, assigned and designated Benjamin A. Kahn, United States Bankruptcy Judge, to this Court and to the captioned, jointly administered cases, together with all associated adversary proceedings.  Case No. 19-30289, ECF No. 2011.  Thereafter, the Honorable Joseph R. Goodwin entered an Order referring the underlying bankruptcy cases and all related proceedings to this Court as contemplated by the order entered by the Honorable Roger L. Gregory and under 28 U.S.C. § 157(a).  Case No. 19-30289, ECF No. 2014.  Therefore, to the extent that the district court would have subject matter

---

[4] Defendant has not challenged the subject matter jurisdiction of the Court under 28 U.S.C. § 1334.  The Court nevertheless has an obligation to consider its subject matter jurisdiction.  <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500, 514 (2006); <u>Constantine v. Rectors & Visitors of George Mason Univ.</u>, 411 F.3d 474, 480 (4th Cir. 2005).

jurisdiction over this proceeding, it has referred the matter to this Court under 28 U.S.C. § 157(a).

This proceeding falls within bankruptcy subject matter jurisdiction. Under 28 U.S.C. § 1334(b), the district court is granted non-exclusive jurisdiction over civil proceedings arising under title 11 or arising in or related to cases under title 11. "A proceeding or claim 'arising in' Title 11 is one that is ''not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy.''" _Valley Historic Ltd. P'ship v. Bank of New York_, 486 F.3d 831, 835 (4th Cir. 2007) (quoting _Grausz v. Englander_, 321 F.3d 467, 471 (4th Cir. 2003)).

In _Valley Historic_, the Fourth Circuit determined that a breach of contract claim owned by the estate that pre-dated the filing of the bankruptcy case was not one that could have no existence outside of bankruptcy, and, therefore, did not "arise in" the bankruptcy case. _Id._ at 836 (observing that "[i]t seems self-evident that a claim . . . that pre-dates the filing of the Chapter 11 case cannot be said to have arisen within that case"). In contrast to a claim by the estate against a third party that arises from a prepetition contract like that in _Valley Historic_, circuit courts have made clear that claims arising from post-petition contracts with the estate or the bankruptcy trustee "arise in" the case for purposes of 28 U.S.C. § 1334(b) and subject matter

jurisdiction. See Am. Freight Sys. V. Blymyer Eng'rs, Inc. (In re Am. Freight Sys.), 236 B.R. 47, 53-54 (Bankr. D. Kan. 1999) (citing Arnold Print Works, Inc., v. Apkin (In re Arnold Print Works, Inc.), 815 F.2d 165 (1st Cir. 1987); Maitland v. Mitchell (In re Harris Pine Mills), 44 F.3d 1431 (9th Cir. 1995); Sanders Confectionery Prods. v. Heller Fin'l, Inc., 973 F.2d 474 (6th Cir. 1992), cert. denied 506 U.S. 1079 (1993); Ben Cooper, Inc. v. Ins. Co. of the State of Pennsylvania (In re Ben Cooper, Inc.), 896 F.2d 1394 (2d Cir. 1990), vacated and remanded for consideration of appellate jurisdiction, 498 U.S. 964, (1990), opinion reinstated on reconsideration, 924 F.2d 36 (2d Cir. 1991), cert. denied 500 U.S. 928, (1991)).

As observed by the court in American Freight, each of these cases merely determined that such actions were core but did not expressly find the basis for core jurisdiction. Id. Nevertheless, because contract claims with a bankruptcy estate cannot exist outside of bankruptcy, claims arising from post-petition contracts with the estate arise in the bankruptcy case. Id.; cf., Stern v. Marshall, 564 U.S. 462, 476 (2011) (observing that "core proceedings are those that arise in a bankruptcy case or under Title 11").[5]

---

[5] The concept is analogous to the jurisdiction and authority of the bankruptcy court to determine prepetition state-law based claims against the federally created bankruptcy estate.  It has been long established that state-law based claims against the debtor are subject to both the jurisdictional and non-Article

Confirmation of Debtors' plan did not divest this Court of subject matter jurisdiction over core proceedings arising in the case.  In <u>Valley Historic</u>, the Fourth Circuit determined that, in order for a bankruptcy court to have "related to" jurisdiction post-confirmation, the proceeding must have a "close nexus" to the plan.  486 F.3d at 836-37 (following <u>Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)</u>, 372 F.3d 154, 166 (3d Cir. 2004)).  If a proceeding is a core matter, however, the close nexus test does not apply.  <u>Mesabi Metallics Co., LLC v. B. Riley FRB, Inc. (In re Essar Steel Minn., LLC)</u>, 47 F.4th 193, 202 (3d Cir. 2022) (holding that the bankruptcy court continues to have subject matter jurisdiction over core matters post-confirmation, and "as the action was a core proceeding under the Bankruptcy Code, the close nexus test is not in play").  Because this action to enforce contracts entered with the estate arises in the bankruptcy case, the Court has subject matter jurisdiction over this proceeding.

---

III authority of the bankruptcy court once those non-bankruptcy claims are asserted against the bankruptcy estate.  <u>See</u> <u>Wiswall v. Campbell</u>, 93 U.S. 347, 350 (1876) (concluding that the non-Article III bankruptcy power includes authority to adjudicate state-law based claims against the estate); <u>see also</u> 1 Collier on Bankruptcy ¶ 3.01[3][e][iv] (listing both the allowance and disallowance of claims and actions "to recover a postpetition account" as proceedings "arising in" title 11).  As with prepetition state-law based contractual claims asserted against a bankruptcy estate that would not exist but for the bankruptcy, a post-petition contract with the bankruptcy trustee or debtor in possession could not have arisen outside of the bankruptcy case.  For these reasons, a proceeding to enforce a contract that a party enters with the estate arises in the case.

### 2.   This is a statutorily core proceeding that the Court may hear and determine under 28 U.S.C. § 157(b)(1).

Under 28 U.S.C § 157(b), bankruptcy judges "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments."  28 U.S.C.S. § 157(b)(1); see Yost v. Huntington Nat'l Bank (In re Hard Rock Expl., Inc.), No. 2:20-cv-00276, 2022 U.S. Dist. LEXIS 80109 (S.D. W. Va. May 3, 2022).  Section 157 of title 28 is not jurisdictional; it merely "allocates the authority to enter final judgment between the bankruptcy court and the district court."  Stern, 564 U.S. at 480.

Defendants contend that this matter is not statutorily core because it is not included among those specifically listed core matters in 28 U.S.C. § 157(b)(2).  Defendants' contention is incorrect for several reasons.  First, the statutory authority for a bankruptcy court to hear and determine proceedings is granted under 28 U.S.C. § 157(b)(1), not (b)(2).  Section 157(b)(1) authorizes the bankruptcy courts to "hear and determine . . . all core proceedings . . . arising in a case under title 11 . . . ."  28 U.S.C. § 157(b)(1).  As discussed above, actions on post-petition contracts arise in the bankruptcy case.  Matters that arise in a case also are statutorily core under § 157(b)(1).  Stern, 564 U.S. at 466 (interpreting § 157(b)(1) to provide that "core proceedings are those that arise in a bankruptcy case or

under Title 11"). Second, contrary to Defendants' argument, the list of core matters under § 157(b)(2) "is not limiting, since it uses the word 'include.'" 1 Collier on Bankruptcy ¶ 3.02[3]. The list of core matters that are not specifically listed in § 157(b)(2) "is virtually endless." Id. "[T]he better reasoned cases have held that actions on post-petition accounts receivable (indeed, actions based upon any type of post-petition contract with a trustee or debtor in possession) are core; such causes of action 'arise in' the title 11 case, and were not owned by the debtor at the time the title 11 case was commenced." Id. at ¶ 3.02[5]. INMET entered all three of the Agreements with Debtors post-petition and under the auspices of a sale in which they participated and requested approval by this Court. The claims in the Complaint arise from the Agreements and the transactions approved by this Court. ECF No. 1.[6] As such, this is a statutorily

---

[6] The First Circuit has held that actions to enforce post-petition contracts entered with the estate fall under 28 U.S.C. § 157(b)(2)(A) and (O). In re Arnold Print Works, Inc., 815 F.2d 165, 168 (1st Cir. 1987) (holding that an action on a postpetition contract for sale of the debtor's assets concerns the administration of the estate "because it involves a claim that arose out of the administrative activities of a debtor-in-possession"). At least one court disagreeing that actions on postpetition contracts arise in the bankruptcy case, nevertheless held that a bankruptcy court has post-confirmation subject matter jurisdiction, statutory authority, and constitutional authority to enter final judgment in such actions. Corliss Moore & Assoc., LLC v. Credit Control Services, Inc., 497 B.R. 219 (E.D. Va. 2013) (refusing to withdraw the reference in an action by a liquidating trustee to enforce a contract entered by the debtor in possession, and determining that the action related to the bankruptcy case for purposes of § 1334(b), that the bankruptcy court could enter final judgments with consent of the parties under 28 U.S.C. § 157(c)(2), and that, by entering a contract with the debtor in possession, the counterparty consented to adjudication of that contract in the bankruptcy court). Having determined that an action on a post-petition contract with the estate arises in the

13

core proceeding.

### 3.   The Court has constitutional authority to enter final judgment in this proceeding.

Although the analysis is overlapping and sometimes confused with concepts of subject matter jurisdiction and statutory authority, a bankruptcy court's constitutional authority to enter final judgments requires separate consideration. Bankruptcy courts constitutionally may enter final judgment in matters within their subject matter jurisdiction with the consent of the parties, and the right to adjudication by an Article III court is a personal right that is subject to waiver. <u>Wellness Intern. Network, Ltd. V. Sharif</u>, 575 U.S. 665, 678-79 (2015).[7]

By participating in the sale process in this Court, entering sales contracts with the estate, and the express consent to jurisdiction of the bankruptcy court in the Assignment Agreement, Defendants have consented to the authority of this Court entering final judgment in this proceeding. <u>See</u> <u>Corliss Moore & Assoc.</u>,

---

bankruptcy case for purposes of § 157(b)(1), the Court need not determine whether this proceeding concerns the administration of the estate for purposes of 28 U.S.C. § 157(b)(2)(A) and (O). The Court respectfully disagrees with the analysis in <u>Corliss Moore & Assoc.</u>, but ends up in the same place with respect to the jurisdiction and authority of this Court.

[7] As with a state-law based claim asserted against the bankruptcy estate, claims arising out of a contract entered with the estate likely do not require consent of the parties to be finally adjudicated in the bankruptcy court. <u>See</u> <u>Stern</u>, 564 U.S. at 499 (holding that bankruptcy courts may constitutionally enter final judgments in actions that are necessarily resolved in the claims allowance process or that "stem from the bankruptcy itself"). Nevertheless, because entering such a contract with the bankruptcy estate constitutes consent to adjudication in the bankruptcy case with respect to disputes arising therefrom, the Court need not reach that issue.

497 B.R. at 228-29 (citing Edgcomb Metals Co. v. Eastmet Corp., 89
B.R. 546, 550 (D. Md. 1988); and Canadian Shield Fin. Corp. vs.
Estate of Deutscher (In re Vincent), 68 B.R. 865, 867 (Bankr. M.D.
Tenn. 1987)).  As discussed above, Defendants further expressly
consented to the jurisdiction and authority of this Court with
respect to disputes arising from the Assignment Agreement or the
transactions contemplated by it, including the Royalty Agreements.
Therefore, this Court has subject matter jurisdiction, statutory
authority, and constitutional authority to enter final judgments
in this proceeding.

**B. Venue is Proper in this Court.**

Defendant objects to venue in this Court based on the forum
selection provisions in the Royalty Agreements.  Venue is
appropriate in this Court.

### 1.    Plaintiff Has Established Prima Facie that Venue is Proper in this Court.

Under 28 U.S.C. § 1409(a), a proceeding arising in a case
under title 11 may be commenced in the district in which the
bankruptcy case is pending.  Defendants do not dispute that venue
ordinarily would be appropriate in this Court.  Instead, Defendants
argue that venue is inappropriate because the Royalty Agreements
contain forum selection provisions providing that any dispute
arising out of such agreements must be commenced in the state
courts of Fayette County, Kentucky.

15

Parties may agree on a proper forum by including a forum selection clause in their contract. <u>Whitaker v. Monroe Staffing Servs., LLC</u>, 42 F.4th 200, 209 (4th Cir. 2022); <u>Atl. Marine Constr. Co. v. United States Dist. Court</u>, 571 U.S. 49, 63 (2013). Nevertheless, a forum selection clause will not result in venue being "wrong" or "improper" for purposes of Rule 12(b)(3).[8] The terms venue and forum are not identical, even though used synonymously in some contexts. <u>Atl. Marine</u>, 571 U.S. at 56. Venue may be proper even where a forum selection clause designates a different forum. <u>Id.</u>

Defendants did not request an evidentiary hearing on their motion. "Where no evidentiary hearing is held on the issue, a Plaintiff can survive a Rule 12(b)(3) motion to dismiss simply by making a 'prima facie showing of venue.'" <u>Ferro Products Corp. v. Cattrell Cos., Inc.</u>, No. 2:14-cv-30752, 2015 U.S. Dist. LEXIS 131045, at *3 (S.D. W. Va. Sept. 29, 2015). Whether venue is proper in this district depends "exclusively" on federal venue laws and "'a forum-selection clause has no bearing on whether a case falls into one of the specified districts.'" <u>Id.</u> (quoting <u>Atlantic Marine</u>, 571 U.S. at 50). As discussed above, venue is

---

[8] Defendants moved to dismiss solely under Rule 12(b)(3). They did not request that the Court transfer venue under 28 U.S.C. § 1412(a) for either the convenience of the parties or in the interests of justice.

appropriate in this district under 28 U.S.C. § 1409(a).[9]

Because venue is appropriate in this district, the motion to dismiss under Rule 12(b)(3) should be denied.  Nevertheless, even if this adversary proceeding were before the Court on a request to transfer venue in the interests of justice or for the convenience of the parties under 28 U.S.C. § 1412(a),[10] this district would be the appropriate forum.

The three agreements in this case all contemplate and effectuate a single sales transaction that was approved by this Court at the request of both Debtors and Defendants.  In contrast to the Royalty Agreements, the Assignment Agreement provides that this Court will have exclusive jurisdiction over any claim or dispute "which may arise or result from, or be connected with, this [Assignment] Agreement, any breach or default hereunder, or the transaction contemplated under this [Assignment] Agreement," and "[a]ny and all proceedings related to the foregoing."  ECF No. 1, Ex. D, ¶ 6.  The Assignment Agreement specifically contemplates the entire transaction and the Royalty Agreements, providing:

> 4. In consideration for the purchase of the Purchased Assets and in addition to the assumption of the Assumed Liabilities:
> . . .
>
>     b. Contemporaneously herewith, Buyer and Sellers are

---

[9] Even if this proceeding were merely related to the bankruptcy case, venue would be appropriate in this district under 28 U.S.C. § 1409(b).

[10] The Court will address 28 U.S.C. § 1412(a) in the interests of judicial economy and because the parties have addressed fairness and convenience of the forum in their filings.

entering into a Royalty Agreement, pursuant to which Buyer agrees to pay Sellers a royalty payment with a Net Present Value when using a discount rate of 20% ("NPV") in the amount of $9,100,000, payable over six (6) years in annual fixed amounts of $2,738,092, and pre-payable in whole or in part at any time at a discount rate of 20%; and

c. Upon recommencement of mining operations at the Black Mountain and Lone Mountain sites situated in Harlan, County, Kentucky, and Wise County, Virginia, and for a period of two years thereafter, Buyer will pay a royalty equal to $0.25 per ton of coal mined from those operations, up to a total of $550,000 (the "Employee Royalty").

ECF No. 1, Ex. D, ¶ 4.

Despite the clarity with which the parties agreed to jurisdiction and venue in this Court in the Assignment Agreement, Defendants argue that the Court should dismiss the claims for breach of the Royalty Agreements, and thereby give meaning to both conflicting provisions. ECF No. 22, at 1. "As a general matter, when faced with two or more conflicting forum selection clauses, federal courts are loath to enforce all of them 'out of concern for wasting judicial and party resources.'" Samuels v. Medytox Sols., Inc., No. 13-7212, 2014 U.S. Dist. LEXIS 125525, at *12 (D.N.J. Sep. 8, 2014); see, e.g., Jones v. Custom Truck & Equipment, LLC, No. 10-611, 2011 U.S. Dist. LEXIS 7025, at *4 (E.D. Va. Jan. 25, 2011) (refusing to bifurcate a case based on a single transaction governed by three separate agreements with conflicting forum selection provisions, and observing that "[f]ederal courts construing conflicting forum selection clauses governing separate

claims raised in a single action often decline to enforce both clauses out of concern for wasting judicial and party resources"); Intelligent Disc. Mgmt, LLC v. Omnivere Holding, LLC, No. 1:15-cv-01134-GMS, 2016 U.S. Dist. LEXIS 92048, at *7 (D. Del. July 25, 2016) (describing the holding in Jones declining "to enforce both clauses out of concern for wasting judicial and party resources" as the "wise approach").

It would be especially inappropriate to bifurcate this dispute. The claims arise out of the same integrated purchase of assets from the bankruptcy estate—the entirety of which was approved by the Court in the Sale Order and specifically contemplated by the parties in the Assignment Agreement. The Agreements have the same effective date and were executed by the same parties who were represented by the same counsel for each agreement. The forum selection provision in the Assignment Agreement specifically contemplates that exclusive jurisdiction will be appropriate not only for claims arising from a breach of the Assignment Agreement itself, but also for any dispute connected with the Assignment Agreement or the transaction contemplated by the Assignment Agreement. It would be inefficient and a significant waste of judicial and Trust resources that otherwise would be available for creditors for this Court to transfer the claims under the Royalty Agreements to a state court in Fayette County, Kentucky, while keeping the agreed exclusive jurisdiction

in this Court with respect to the claims under the Assignment
Agreement.

Having determined that the Court will not bifurcate this
dispute, the Court must determine which forum selection clause
should be enforced, if any. When considering whether to transfer
venue for the convenience of the parties or in the interests of
justice, a valid forum selection clause should be given controlling
weight. Atl. Marine, 571 U.S. at 63. Nevertheless, where there
are inconsistent forum selection clauses, courts adopt different
approaches. In Intelligent Discovery, having determined that it
would not bifurcate the cases, the court disregarded both forum
selection provisions and proceeded with the traditional analysis
for transfer of venue for the convenience of the parties under 28
U.S.C. § 1404(a).[11] 2016 U.S. Dist. LEXIS 92048, at *7. When
considering whether to transfer venue for the convenience of the
parties or in the interests of justice, there is a strong
presumption in favor of the home bankruptcy court. Dunlap, 331
B.R. at 680-81. The factors to consider include the proximity of
creditors to the court, the proximity of the debtor to the court,
the proximity of witnesses, the location of the assets, and the
economical and efficient administration of the bankruptcy case.

---

[11] The bankruptcy corollary of § 1404(a) is found in 28 U.S.C. § 1412(a). See
Dunlap v. Friedman's, Inc., 331 B.R. 674 (S.D. W.Va. 2005) (holding that § 1412,
rather than § 1404(a) applies in bankruptcy proceedings, even if those
proceedings are merely related to the bankruptcy case).

Miller v. Huntington Nat'l. Bank N.A., No. 2:12-cv-01255, 2012
U.S. Dist. LEXIS 137991, at *5 (S.D. W. Va. Sept. 26, 2012)
(transferring venue of a proceeding arising in the bankruptcy case
to the home bankruptcy court).

In Miller, the court found that "[t]he final factor, the
economical and efficient administration of the estate, [was]
particularly important . . .." Id. at 8.  Because the outcome of
the litigation could have affected other creditors in the case and
any damages recovered by the plaintiff would be distributed to
creditors of the bankruptcy estate, the court held that the
appropriate venue was the home bankruptcy court.  Id.  In fact,
the court indicated that the core interests of the bankruptcy
estate would overcome even the presumption of the plaintiff's
chosen venue.  Id.  As in Miller, the Plan in this case similarly
provides that any recovery by the Trust will be among the assets
available for distribution to creditors of the bankruptcy estate.
Even more compelling in this case is the fact that Defendants
elected to participate in the bankruptcy process, to obtain
valuable assets from the estate with the approval of this Court,
and consented to this Court's exclusive jurisdiction in the
Assignment Agreement.  Therefore, venue is appropriate in this
Court under the analysis of the district court in Miller.

Other cases considering whether to transfer venue under §
1404(a) or § 1412(a) have considered the fairness of enforcing

21

competing forum selection provisions.  In doing so, those courts
have examined the competing private interests of the parties,
"giving due regard to the forum selection clauses" in both
contracts.  _Samuels_, 2014 U.S. Dist. LEXIS 125525, at *22-23.  The
private factors considered by these courts are:

> (1) the plaintiff's preferred forum; (2) the defendant's
> preferred forum; (3) where the claim or claims arose; (4) the
> convenience of the parties, with special emphasis on their
> respective physical and financial conditions; (5) the
> convenience of the witnesses with respect to their
> availability for trial; and (6) the location of books and
> records to the extent that their location would hinder their
> ability to be produced in discovery.

_Id._ at *23; _Jumara v. State Farm Ins. Co._, 55 F.3d 873, 879 (3d
Cir. 1995).

Each party argues that the _Samuels_ factors weigh in its favor.
For the first factor, Plaintiff's preferred forum is this Court.
For the second factor, Defendants' preferred forum is Fayette
County, Kentucky.  "In order to more clearly determine whose
preference should prevail, it is appropriate to analyze the
distribution of both the claims and the overall amount in
controversy" under the agreements.  _Samuels_, 2014 U.S. Dist. LEXIS
125525, at *24.  "[U]nless the balance is strongly tipped in favor
of the defendant, the plaintiff's choice of forum should not be
disturbed."  _Id._ (quoting _Gulf Oil Corp. v. Gilbert_, 330 U.S. 501,
508 (1947)).

Defendants state that these factors favor the Royalty Agreements clauses because "the majority of Plaintiff's claims – both in number and dollar amount – arise from the Royalty Agreements rather than the Assignment Agreement." ECF No. 14, at 13. The court in <u>Samuels</u>, however, examined the number of claims raised in the complaint rather than the number of contracts. In this case, both Count I and Count II of the Complaint pertain to both the Royalty Agreements and the Assignment Agreement. Count I is against Kopper Glo for declaratory judgment regarding obligations under the Agreements and the Sale Order and Count I is against Kopper Glo for breach of contract regarding the Agreements. ECF No. 1.

For the amount in controversy, Defendants claim that "more than 90% of the amount Plaintiff seeks in this Adversary Proceeding arises from alleged breaches of the Royalty Agreements." ECF No. 14, at 12. Plaintiff seeks $17,688,298.52 in damages under the Royalty Agreements and $1,846,304.18 under the Assignment Agreement. ECF No. 1, ¶ 68. Additionally, Plaintiff seeks $187,808.02 in legal fees and expenses and $49,000.00 for financial service fees. <u>Id.</u> These amounts do not arise under either agreement.

Neither the number of claims, nor the amount of damages arising under any particular agreement weighs in favor of transfer of venue in this case. Here, all three contracts govern a single,

23

integrated acquisition of assets.   None of the contracts would
have stood alone, and neither of the Royalty Agreements would have
existed but for the assignments contemplated in the Assignment
Agreement.   It makes no sense to parse the transaction, and the
Assignment Agreement implicitly recognizes this by specifically
contemplating and reciting the central compensation terms of the
Royalty Agreements.   The Court would not have approved any one of
the agreements without the other two.   Therefore, this factor does
not weigh in favor of transferring venue from this district.   When
the factors do not strongly tip in favor of Defendants, Plaintiff's
choice of forum is entitled to deference, and Plaintiff's choice
of this Court as proper venue should prevail.[12]

For the third factor, where the claim arose, Defendants argue
that the claims arose in Fayette County, Kentucky because two of
the three mines are located in Kentucky.   ECF No. 22, p. 5.   "[I]n
disputes involving contracts, 'a court should consider where the
contract was negotiated or executed, where the contract was to be
performed, and where the alleged breach occurred.'"   Samuels, 2014
U.S. Dist. LEXIS 125525, at *26-27 (quoting Depuy Synthes Sales,
Inc. v. Gill, No. 13-04474, 2013 U.S. Dist. LEXIS 154825, at *8

---

[12] The court in Samuels analyzed the number of claims and the amount in
controversy because the plaintiff and the defendant each favored a different
forum.   The number of claims favored the defendant.   The amount in controversy
did not favor either party because the numbers were close to each other.   Even
though the number of claims favored the defendant, the court ruled that
plaintiff's preference should prevail because a plaintiff's forum of choice is
entitled to deference.   Samuels, 2014 U.S. Dist. LEXIS 125525, at *25-26.

(D.N.J. Oct. 29, 2013)).  Here, the Agreements were negotiated, arose in the bankruptcy case, and were approved by this Court. This factor favors this Court as the proper venue.

For the fourth factor, the convenience of the parties, this Court is the proper venue because Plaintiff has been litigating the bankruptcy case and other claims in this Court.  Defendants argue that Kentucky is more convenient for the parties because the airport has more direct flights.  ECF No. 22, at 5.  Further, Defendants argue that "it is not more inconvenient for the Trustee to litigate the disputes related to the Royalty Agreements in Fayette County, Kentucky."  ECF No. 14, at 9.  However, "[t]he Trust is winding up all of the estates in this Court," and Plaintiff's parties have familiarity with this Court.  ECF No. 21, at 11.  The Court also has familiarity with the transaction it approved.  Thus, the fourth factor weighs in favor of this Court as the proper venue.

For the convenience of the witnesses with respect to their availability for trial, neither party has provided evidence regarding the convenience of the witnesses.  Thus, this factor does not favor either clause.

As Defendants and Plaintiff stated, the sixth factor is irrelevant in this case.  ECF No. 21, at 13; ECF No. 22, at 5.

The court in <u>Samuels</u> next examined public interest factors to determine whether the transfer is appropriate.  The public interest factors it considered were:

> (1) enforceability of a potential judgment; (2) practical considerations with respect to efficiency and cost savings; (3) the comparative administrative difficulty between the forums, with specific focus on court congestion; (4) "the local interest in deciding local controversies at home;" (5) public policy considerations; and (6) "the familiarity of the trial judge with the applicable state law in diversity cases."

<u>Samuels</u>, 2014 U.S. Dist. LEXIS 125525, at *28-29 (citing <u>Jumara</u>, 55 F.3d at 879).

For efficiency and cost savings, this Court is the proper venue because this Court is most familiar with Plaintiff's assets and the Agreements.  As both Plaintiff and Defendants point out, "there are no known administrative difficulties with either of the potential forums."  ECF No. 22, p. 6; ECF No. 21, p. 13.

For the local interests, this Court is the proper venue because Debtor's creditors are located across the country, and this Court has provided a central forum for resolution of Debtors' assets and debts.  The public interest factors do not favor transfer from this district.  The <u>Samuels</u> factors therefore similarly tilt in favor of the presumption that matters arising in a bankruptcy case be litigated in the home forum.

### IV. Conclusion

For the reasons set forth herein, the Court will enter its

orders determining that this Court has authority to enter final judgments in this adversary proceeding and denying the Motion to Dismiss.

[END OF DOCUMENT]